UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| HEALTHPRO HERITAGE, LLC, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | Case No. 1:19-cv-143 |
| v. | ) | |
| | ) | Judge Mattice |
| HEALTH SERVICES MANCHESTER, LLC | ) | Magistrate Judge Lee |
| *doing business as* HORIZON HEALTH & | ) | |
| REHAB CENTER, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**ORDER**

Before the Court is the Amended Motion for Summary Judgment of Plaintiffs HealthPRO Heritage, LLC and Rehab Solutions (North Carolina), LLC ("Plaintiffs"). [Doc. 42]. Plaintiffs contend that summary judgment is proper against Defendants Health Services Manchester, LLC d/b/a Horizon Health & Rehab Center; Knoxville Healthcare, LLC d/b/a Westmoreland Health and Rehab; Benchmark Healthcare of Dane County, Inc. d/b/a Heartland Country Village; Madisonville Healthcare, LLC d/b/a Madisonville Health and Rehab; Waynesboro Healthcare, LLC d/b/a Waynesboro Health and Rehab Center; Hidden Acres Healthcare, LLC d/b/a Mt. Pleasant Health and Rehab Center (collectively, "Facility Defendants"); and Health Services Management Group, LLC ("Guarantor Defendant" but, all collectively, "Defendants"). For the reasons set forth herein, the Motion will be **GRANTED IN PART** and **DENIED IN PART**.

-1-

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs entered into separate service agreements with Defendants at various and dispersed times prior to April 2017, under which Plaintiffs provided rehabilitation services and Defendants reimbursed them. [*See generally* Doc. 1-3]. Facilities Defendants then defaulted on payments required under those service agreements and, on April 5, 2017, the Parties executed a Settlement Agreement specifying both the terms of payment for the obligations then in default ("Default Balance") and payment for services going forward ("Ongoing Services"). [*See* Doc. 1-1]. Guarantor Defendant guaranteed at least some of Facilities Defendants' obligations under the Settlement Agreement, although precisely which obligations is at issue in this case.

In early 2018, Defendants defaulted on their obligations under the Settlement Agreement and Plaintiffs sued, leading Judge McDonough to enter an Agreed Order laying out terms of a settlement as to obligations under the Settlement Agreement. [Doc. 1-2; *see also* No. 1:18-cv-68, Doc. 13].

Defendants then violated the Settlement Agreement again by failing to pay for Ongoing Services. It is "admitted[] that the Facility Defendants each owe various" amounts for Ongoing Services, but Defendants deny that they are jointly and severally liable for the Ongoing Services balances and deny that Guarantor Defendant guaranteed "any unpaid amounts arising from Ongoing Services." [Doc. 47, at 4-5]. Moreover, Defendants contend that the precise amounts they owe are in dispute.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting

the presence or absence of genuine issues of material fact must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see*

*also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

Prior to the merits, the Court will consider the contention of four Facility Defendants that there is no federal subject-matter jurisdiction over them. No Defendants dispute diversity, but the following four assert that the amount-in-controversy as to any claims against them were, at the time of filing, as follows and therefore below the $75,000 threshold required by 28 U.S.C. § 1332(a):

| | |
|---|---|
| Health Services Manchester, LLC d/b/a Horizon Health & Rehab Center | $73,962.78 |
| Benchmark Healthcare of Dane County, Inc. d/b/a Heartland Country Village | $38,758.18 |
| Waynesboro Healthcare, LLC d/b/a Waynesboro Health and Rehab Center | $36,299.64 |
| Hidden Acres Healthcare, LLC d/b/a Mt. Pleasant Health and Rehab Center | $57,267.05 |

Plaintiffs, however, allege that the jointly-executed Settlement Agreement between the Parties gives rise to joint and several liability among Defendants. The Court may therefore aggregate the claims against Defendants for purposes of the amount-in-controversy. *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011) ("[Plaintiff] alleges that Defendants are jointly and severally liable for each of the multiple claims brought pursuant to the [Telephone Consumer Protection Act] and Ohio law. ... We thus can

-4-

aggregate [plaintiff's] claims to determine whether the total alleged exceeds $75,000."); *Reusser v. Saxon Mortg. Servs., Inc.*, No 2:12-cv-87, 2012 WL 3241973, at *3 (S.D. Ohio Aug. 3, 2012) ("Because the plaintiffs assert a common undivided right against defendants who they allege are jointly liable, the plaintiffs' claims may be aggregated in determining the amount in controversy."). Doing so, it is clear that the amount-in-controversy exceeds $75,000 and that jurisdiction is proper.

Under Tennessee law,[1] "settlement agreements are contracts between the parties, and the rules governing the interpretation of contracts apply to settlement agreements." *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012). The "common thread in all Tennessee contract cases—the cardinal rule upon which all other rules hinge—is that courts must interpret contracts so as to ascertain and give effect to the intent of the contracting parties consistent with legal principles." *Individual Healthcare Specialists, Inc. v. Bluecross Blueshield of Tenn., Inc.*, 566 S.W.3d 671, 688 (Tenn. 2019). Although Tennessee courts have "sought, albeit imperfectly, to achieve balance in contract interpretation" between strict textual analysis and a free-ranging contextual inquiry, "the strong strain of textualism in Tennessee caselaw demonstrates resolve to keep the written words as the lodestar of contract interpretation." *Id.* at 694. "When a contract is not ambiguous, its interpretation is a question of law that is appropriate for summary judgment." *Battery Alliance, Inc. v. T & L Sales Inc.*, No. W2015-00201-COA-R3-CV, 2015 WL 6873202, at *5 (Tenn. Ct. App. Nov. 9, 2015).

---

[1] The Settlement Agreement specifies that "This Agreement will be governed by, and construed in all respects in accordance with the laws of the State of Tennessee." [Doc. 1-1, at 7].

Plaintiffs seek declaratory judgment as to the meaning of the Settlement Agreement and entry of a consent judgment attached thereto, [Doc. 1 ¶¶ 43-45], and state two causes of action for breach of contract relating to 1) the Settlement Agreement and 2) currently-operative services agreements. [Doc. 1 ¶¶ 46-51]. They move for summary judgment as to all three claims.

Defendants do not appear to dispute the validity or enforceability of the Settlement Agreement but argue 1) that it does not impose joint and several liability as to amounts due for Ongoing Services, and 2) that it only requires Guarantor Defendant to guarantee the Default Balance, not amounts owed for Ongoing Services. [*See* Doc. 47, at 6-8].

The first paragraph of the Settlement Agreement explains that it is "made by and between ... [Facility Defendants, referred to in the Settlement Agreement as "HSM Entities"] jointly and severally, and" Guarantor Defendant and Plaintiffs. [Doc. 1-1, at 1]. Section 2 requires that Facility Defendants "jointly and severally, shall pay [Plaintiffs] the Default Balance" for then-overdue obligations on a set schedule. [*Id.* at 2]. Section 3 states that "[i]n addition to the payments set out in Section 2 above ... HSM Entities shall make timely payments to [Plaintiffs]" for Ongoing Services according to the terms therein. [*Id.*] Defendants maintain that the plain language of Section 3 and the way in which it differs from Section 2—the latter uses the term "jointly and severally" while the former does not—compels the conclusion that joint and several liability attaches only as to the Default Balance.

Plaintiffs argue that "jointly and severally" in Section 2 should not be read to the exclusion of joint and several liability under Section 3 because the Settlement Agreement treats Facility Defendants (HSM Entities) as joint and several throughout. Beyond the

first paragraph that lumps them "jointly and severally" into one designation, Section 6 states that "the HSM Entities shall immediately pay to [Plaintiffs] an amount equaling the *total remaining outstanding balance owed* to [Plaintiffs] by the Transferred Facility" upon any change of control or transfer of any facility controlled by Facility Defendants. [Doc. 1-1, at 3 (emphasis added)]. In other words, transfer of control at one facility triggers joint and several liability as to amounts owed for that facility's Ongoing Services for all Facility Defendants. Similarly, in the event of an uncured settlement default, Section 7 authorizes entry of a consent judgment against the "HSM Entities … jointly and severally" for a set amount plus "*other amounts owed pursuant to the Service Agreements* or breach of this [Settlement] Agreement" less payments or credits. [*Id.* at 3-4 (emphasis added)]. Section 10 provides that if "any of the HSM Entities terminate the Services Agreements without cause, the HSM Entities shall immediately pay to [Plaintiffs] the amount equaling the *total remaining outstanding balance owed to* [Plaintiffs] *by the terminating Facility.*" [*Id.* at 4 (emphasis added)].

Read altogether, the Settlement Agreement treats Facility Defendants as though their obligations are joint and several, including as to Ongoing Services. Indeed, the actual terms of the Settlement Agreement refer to Facility Defendants exclusively as "HSM Entities," naming them individually in the first paragraph only long enough to tie them together. Accordingly, Plaintiffs motion for summary judgment is granted insofar as the Court concludes that the Settlement Agreement holds Facility Defendants jointly and severally liable for unpaid Ongoing Services.

Guarantor Defendant, however, is not an "HSM Entity" for purposes of the Settlement Agreement and is instead separately designated as "Guarantor." [*See id.* at 1].

Plaintiffs maintain that Guarantor Defendant agreed to guarantee any unpaid obligations—including for Ongoing Services—of Facility Defendants, while Guarantor Defendant maintains that the Settlement Agreement instead requires it only to guarantee the Default Balance.

Section 11(a) of the Settlement Agreement provides: "Guarantor hereby … guarantees[] the Default Balance (the '**Guaranteed Amount**') when due as set forth herein." [*Id.* at 5 (emphasis original)]. Indeed, Section 11 deals with the Guarantor, while the sections pertaining to Facility Defendants' obligations often leave Guarantor Defendant out entirely. The plain text of the agreement, then, suggests that Guarantor is responsible only for the "Guaranteed Amount," which is the Default Balance.

Plaintiffs rest their argument entirely on the attached Consent Judgment, which provides that in the event of default, judgment may be "entered against Defendants, jointly and severally" for whatever "remains due and owing under the terms of the [Settlement] Agreement." [*Id.* at 14]. Of course, the Settlement Agreement includes provisions covering payment for Ongoing Services, indicating that all Defendants—not just Facility Defendants—may be liable for Ongoing Services.

The broad phrasing of the Consent Judgment, however, must be read in the context of the larger Settlement Agreement. Section 11 requires Guarantor Defendant to guarantee only the Default Balance, while the remainder of the contract spells out the Facility Defendants' obligations. The Parties plainly did not intend to treat Guarantor as merely another HSM Entity. Quite the opposite, Guarantor Defendant took on the unique and important role of guaranteeing the Default Balance in "consideration of" Plaintiffs signing the Settlement Agreement, which allowed Guarantor Defendant to "realize

significant value." [*Id.* at 5]. But this separate and unique treatment of Guarantor Defendant suggests that the Parties did not intend to fold it into whatever terms govern the Facility Defendants. Moreover, the Consent Judgment is meant to enforce the terms of the Settlement Agreement, not to rewrite it. Accordingly, given the language of Section 11 and the overall structure of the agreement, the Court must deny Plaintiffs' motion for summary judgment in this respect.

To the extent that the Settlement Agreement is valid—which all Defendants admit—and Defendants are in violation of it—which all Defendants admit—Plaintiffs request summary judgment as to liability. The uncontested question of liability is appropriate for summary judgment and Plaintiffs' motion is therefore granted in that respect.

Plaintiffs contend that the amounts set forth as owed in the Complaint accurately represent damages. [*See* Doc. 42-1 (affiant Kristin Watkins laying out the past due balances for Defendants through July 31, 2019)]. Defendants' response, however, asserts that they have not received billing invoices through the period for which Plaintiffs seek damages and therefore cannot dispute—if dispute is appropriate—the amounts sought. [*See* Doc. 47-1 ¶ 12 (affiant Thomas Johnson stating that the "last billing statements … were received by Defendants in February, 2019")]. In reply, Plaintiffs provide up-to-date billing invoices for the Facility Defendants. [*See* Doc. 49-2]. Although the Court is reticent to deny summary judgment on the basis that Defendants *might* dispute damages, it must resolve ambiguities in the non-movants' favor and therefore cannot enter judgment for invoices that Defendants aver they did not receive until Plaintiffs' reply, notwithstanding

Plaintiffs' affidavit averring that Plaintiffs did transmit the invoices. Accordingly, summary judgment as to damages must be denied.

The Court's declaration as to the meaning of the Settlement Agreement and finding of liability, however, may aid the Parties in identifying the scope and amount of damages. The Parties are therefore ordered to confer and, if possible, apprise the Court what is owed by each Defendant and submit an up-to-date Consent Judgment enforcing the Settlement Agreement and resolving this matter. They shall apprise the Court of their progress by January 31, 2020.

## IV. CONCLUSION

For the reasons set forth and in accordance with the reasoning above, Plaintiffs' Amended Motion for Summary Judgment, [Doc. 42], is **GRANTED IN PART** and **DENIED IN PART**. The Parties are hereby **ORDERED** to confer as to damages and, if possible, jointly apprise the Court what is owed by each Defendant and submit an up-to-date Consent Judgment enforcing the Settlement Agreement and resolving this matter. The Parties shall apprise the Court of their conferral and any results therefrom **on or before January 31, 2020**.

**SO ORDERED** this 13th day of December, 2019.

_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

-10-